*John R. Parks, District Attorney*, for appellee.

## S90A1593. DUNN v. SNEED.
(400 SE2d 10)

BENHAM, Justice.

This is an appeal from a judgment based on a jury verdict for the caveator in a will contest. The propounder of the will was Dunn, a sister of the testatrix, and the caveator was the testatrix's nephew, Sneed. The grounds of the caveat were lack of testamentary capacity and fraud. The testatrix was in the hospital because of cardiac problems at the time the will was made, and the caveator contended that the testatrix was rendered incapable of forming a testamentary intent because she was disoriented by pain and drugs. Appellant complains that the evidence of lack of testamentary capacity was insufficient to overcome the prima facie case the propounder made, entitling the propounder to a directed verdict. We disagree and affirm.

Appellant relies largely on this court's rulings in *Beman v. Stembridge*, 211 Ga. 274, 282 (85 SE2d 434) (1955):

> [T]he condition of the testator's mind at the time of the execution of the will determines whether he can make a valid will. [Cit.] "As tending to illustrate the mental condition at that time evidence of such condition at other times may be received; but where it is sought to establish testamentary incapacity by such evidence, it does not controvert the positive testimony of the subscribing witnesses unless it would be proof of testamentary incapacity at the time the will was signed." [Cits.]

Appellant contends that the only evidence concerning the condition of the testatrix's mind at the time of the will was that she was alert and competent. Under appellant's view of the evidence, the caveator's evidence related only to other times than the time the will was signed and, although admissible, "it does not controvert the positive testimony of the subscribing witnesses. . . ." Id.

A careful review of the transcript in this case reveals that appellant's view of the evidence is mistaken. First, it is questionable whether there was any positive evidence of the subscribing witnesses for appellee-caveator to overcome. Only two of the witnesses to the signing of the will testified. One, the attorney who stated that he believed he drafted the will, testified that he had no real memory of the events surrounding the signing of the will, although he did remember going to the hospital for that purpose. He did testify, however, that it

was his policy to ensure that the person signing was competent before permitting that person to execute the instrument. The other witness who testified was one of the testatrix's doctors. His recollection was that he was asked to witness the signature only, not the testatrix's capacity at the time she signed the will.

Even assuming that the testimony of the subscribing witnesses, together with the testimony of the propounder, the propounder's husband, and a friend of the testatrix to the effect that the testatrix was alert and competent, was sufficient to make out a prima facie case, the evidence presented by the caveator was sufficient to raise a jury question on the issue of capacity. The doctor who witnessed the will testified that the testatrix, during the time she was hospitalized, was on a course of pain medication, heart medication, blood pressure medication, sleeping pills, and tranquilizers; that the mind-altering characteristics of those drugs would have an exaggerated effect on a person of the testatrix's age and condition; that the testatrix had been in a lot of pain and was depressed, expressing a wish to die; that she had been administered an injection of 100 mg of Darvocet several hours before the will was signed; and that it would have been very difficult for her, under all those circumstances, to make decisions regarding the disposition of her estate. Another witness testified that she had known the testatrix all of the witness' life, and that during her stay in the hospital, the testatrix was depressed, cried often, said she did not know what she was doing, and was often groggy from drugs. The witness opined that the testatrix was not competent during that period of hospitalization. Pam Barrett, a grandniece of the testatrix, testified that she came to the hospital around 4:00 p.m. on the day the will was signed, just as the propounder hurriedly left the hospital room (the propounder's witnesses established that the will was signed around 4:00 p.m.). Ms. Barrett stated that the testatrix was heavily sedated and mistook her three times for other persons, once for Ms. Barrett's mother, once for her sister, and once for the testatrix's sister. According to Ms. Barrett, the testatrix was crying and depressed and was not competent. Appellee Sneed, the testatrix's nephew, testified that he saw the testatrix every day she was in the hospital because he worked there most of the time. During that hospitalization, he testified, the testatrix was depressed and in pain and was heavily sedated.

The testimony introduced by the caveator covering a reasonable period of time before and after the time of the execution of the will, and in the case of Ms. Barrett's testimony, concerning a time within moments of the signing of the will, creates a genuine conflict in the evidence regarding the state of the testatrix's mind at the time she signed the will. From that testimony inferences could be drawn by the jury establishing a lack of the requisite mental capacity. *Mallis v.*

*Miltiades,* 241 Ga. 404, 405 (245 SE2d 655) (1978). In addition to creating a jury issue concerning the testatrix's capacity at the time the will was signed, the evidence produced by the caveator raised an issue of credibility. The propounder and her husband testified that the testatrix was not in pain, was not depressed, and was not heavily sedated. The caveator and his witnesses, including one of the testatrix's doctors, gave just the opposite view of the testatrix. Under all those circumstances, it cannot be said that the caveator did not meet the evidence of the propounder or that the jury was not authorized by the evidence to conclude that the testatrix lacked testamentary capacity at the time she signed the will. We find no error in the trial court's denial of appellant's motions for directed verdict and new trial.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 31, 1991.

*Cook & Palmour, Bobby Lee Cook, Jr.,* for appellant.
*Minor, Bell & Neal, Rickie L. Brown,* for appellee.